# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RAUL C. GOMEZ,

      Plaintiff,

      v.

LANEL PALMER, DWAYNE
JOHNSON, and ANDRIA BACOT,

      Defendants.

No. 11 C 1793

Magistrate Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Raul C. Gomez brings this civil rights lawsuit, pursuant to 42 U.S.C. § 1983, against Defendants Lanel Palmer, Dwayne Johnson, and Andria Bacot. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this case is set for trial on January 25, 2016. Before the Court are the parties' motions in limine.

## I. BACKGROUND

On May 16, 2009, Illinois prisoner Raul Gomez sustained a gunshot wound when Correctional Officer Dwayne Johnson fired a round of buckshot in Gomez's direction as prison guards were physically separating two unarmed inmates who had gotten into a scuffle. Gomez alleges that Officer Johnson used excessive force against him and that Sergeant Lanel Palmer and Nurse Andria Bacot were deliberately indifferent to his injuries.

On March 3, 2015, the Court denied Defendants' Motion for Summary Judgment, finding sufficient evidence for a jury to conclude that Bacot's "failure or refusal to provide Gomez with *any* medical treatment for a bleeding gunshot wound was so plainly inappropriate as to permit the inference that the Defendants intentionally or recklessly disregarded his needs." (Dkt. 177 at 20) (emphasis in original) (citation omitted). On June 25, 2015, the Court facilitated a settlement conference, during which the parties made significant progress. (Dkt. 183). On July 14, 2015, the parties reported that Plaintiff has reached a settlement with Defendants Palmer and Johnson.[1] (Dkt. 184). Thus, the only remaining claim is for deliberate indifference to a serious medical need against Bacot.

## II. DISCUSSION

A motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1463 (7th Cir. 1996) ("A motion in limine is a useful device for trying to exclude evidence before trial in order to prevent the trial from being interrupted by wrangles over admissibility or the jury from getting a whiff of prejudicial evidence that may in fact be inadmissible."). The movant has the burden of demonstrating that the evidence is "clearly inadmissible for any purpose." *Plair v. E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). District courts have broad

---

[1] Palmer and Johnson are currently in the process of memorializing a settlement agreement with Gomez. (Dkt. 225 at 2 n.1).

discretion in ruling on motions in limine, but evidence should not be excluded before trial unless it is clearly inadmissible on all potential grounds. *Kiswani v. Phoenix Sec. Agency, Inc.*, 247 F.R.D. 554, 557 (N.D. Ill. 2008). Otherwise, rulings should be deferred until trial so questions of foundation, competency, relevancy, and potential prejudice may be resolved in the proper context. *Id.*

A court's decision to deny a motion in limine does not mean that all evidence contemplated by the motion will be admitted at trial. "Rather, denial means the court cannot determine whether the evidence should be excluded outside the trial context." *McClain v. Anchor Packing Co.*, No. 89 C 6226, 1996 WL 164385, at *2 (N.D. Ill. 1996). Accordingly, "[t]he ruling is subject to change when the case unfolds. . . . Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Luce*, 469 U.S. at 41–42; *see Kiswani*, 247 F.R.D. at 557 ("Trial judges may alter prior in limine rulings, within the bounds of sound judicial discretion.") (citation omitted).

## A. Plaintiff's Motion in Limine No. 1

Plaintiff's Motion in Limine No. 1 seeks to bar specific evidence of the crimes, convictions, and sentences of himself and nonparty witnesses Justin Wilcox and Calvin Clay.[2] (Dkt. 221). Gomez asserts that the only evidence that should be allowed in for impeachment purposes is that he, Wilcox and Clay were incarcerated at

---

[2] Gomez is serving a 90-year sentence for first degree murder and attempted murder; Wilcox is serving a life sentence for murder; and Clay is serving a 60-year sentence for first degree murder. (Dkt. 221 at ¶¶ 2, 4).

Stateville in May 2009 and that they are currently in IDOC custody for felony convictions. (*Id*.).

Under Rule 609, evidence of a felony conviction "must be admitted, subject to Rule 403, in a civil case." Fed. R. Evid. 609(a)(1)(A). Under Rule 403, the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

After careful consideration, the Court finds that allowing Bacot to impeach Gomez, Wilcox and Clay on the specifics of their criminal convictions would be unfairly prejudicial. Allowing evidence that they are convicted murderers encourages the jury to "view [each of them] as a 'bad person' not because he is a liar . . . but instead because he committed a dangerous offense that jurors might find threatening." *Coles v. City of Chicago*, No. 02 C 9246, 2005 WL 1785326, at *3 (N.D. Ill. July 22, 2005). Further, by allowing Bacot to impeach Plaintiff's, Wilcox's and Clay's credibility with the fact that they are each currently incarcerated for felony convictions, as Gomez proposes, satisfies the Rule 609 concern "that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial . . ., the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying." *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987).

Bacot contends *Gora v. Costa*, 971 F.2d 1325, 1330 (7th Cir. 1992), requires "at a minimum, evidence of *the crime charged*, the date, and the disposition of the charge must be admitted." (Dkt. 231 at ¶ 10) (emphasis in original). But the *Gora* trial took

place before Rule 609 was amended to explicitly include the Rule 403 balancing test. 971 F.2d at 1330; *see* Fed. R. Evid. 609 advisory committee's note to 1990 amendments ("The amendment reflects the view that it is desirable to protect all litigants from the unfair use of prior convictions, and that the ordinary balancing test of Rule 403, which provides that evidence shall not be excluded unless its prejudicial effect substantially outweighs its probative value, is appropriate for assessing the admissibility of prior convictions for impeachment of any witness other than a criminal defendant.").

Bacot also contends that the jury will need to consider that after the shotgun was fired in the cell house, the facility was placed on lockdown, prohibiting inmate movement in all but emergency situations. (Dkt. 231 at ¶ 15). "The jury will need to consider whether it was appropriate, as the defense will contend, that the Plaintiff remain in his cell, since he did not have an emergent life-threatening condition, and be taken to the healthcare unit for treatment once the lockdown was lifted." (*Id.*). But the defense will be permitted to introduce evidence that Stateville is a maximum-security facility and the impact of a facility lockdown without introducing evidence of Gomez's, Wilcox's, and Clay's specific offenses and sentences.

Bacot also contends that the length of Gomez's sentence is relevant for damage purposes. (Dkt. 231 at ¶ 14). "This is because the Plaintiff, as a lifetime prisoner, will not incur the same impact or effect from the appearance of scarring, as would a free person who would have a more viable claim for damages from public viewing of a scar." (*Id.*). However, Bacot can make the same argument by focusing on Gomez's

current incarceration for a felony conviction, without the unfair prejudice that would result from describing his crime, conviction, and 90-year sentence. Fed. R. Evid. 403.

Plaintiff's Motion in Limine No. 1 is **GRANTED**. Bacot is limited to impeaching Gomez's, Wilcox's and Clay's credibility only with the fact that each is currently incarcerated in a maximum-security facility for a felony conviction.

## B. Plaintiff's Motion in Limine No. 2

Plaintiff's Motion in Limine No. 2 seeks to bar any testimony, evidence, or argument regarding grievances and lawsuits filed by Gomez that are unrelated to this litigation. (Dkt. 222). He contends that such evidence constitutes improper character evidence and should be barred. (*Id.* at ¶ 3).

Bacot argues that evidence of Gomez's prior grievances and baseless lawsuits should be admitted to demonstrate his propensity for raising minor and insignificant issues through the prison grievance process and legal system. (Dkt. 232 at ¶¶ 5–7). But propensity evidence is disallowed in a civil case. Fed. R. Evid. 404(a)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). And whether Gomez has abused the grievance process is not relevant to whether Bacot was deliberately indifferent to Gomez's serious medical needs in May 2009. Fed. R. Evid. 401. Further, any probative value is substantially outweighed by the danger of unfair prejudice. Fed. R. Evid. 403; *see BP Amoco Chem. Co. v. Flint Hills Res., LLC*, 697 F. Supp. 2d 1001, 1038 (N.D. Ill. 2010) ("[A]ny potential

probative value of [the propensity evidence] was substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, as well as by substantial delay."). Further, allowing evidence of other lawsuits and grievances could "result[ ] in mini-trials on the merits of those litigations, adding substantial delay to the . . . trial." *BP Amoco*, 697 F. Supp. 2d at 1038 (citing *Mathis v. Phillips Chevrolet,* 269 F.3d 771, 775–76 (7th Cir. 2001)).

Plaintiff's Motion in Limine No. 2 is **GRANTED**.

## C. Plaintiff's Motion in Limine No. 3

Plaintiff's Motion in Limine No. 3 seeks to bar any testimony, evidence, or argument regarding Gomez's prison disciplinary record. (Dkt. 223). Gomez contends that evidence of past discipline or misconduct is not relevant, has no probative value, and could confuse the jury. (*Id.* at ¶ 4) (citing Fed. R. Evid. 401, 402, 403, and 404).

Bacot contends that Gomez's "considerable disciplinary records bear on [his] veracity and truth telling, credibility, and his following of prison rules (or lack thereof)." (Dkt. 233 at ¶ 6). To the contrary, Gomez's disciplinary records are not relevant to his claims and do not bear on his credibility or veracity. Bacot does not assert that Gomez has been disciplined for giving false statements or information. (*Id.* at ¶ 3). Thus, "[t]he evidence of his disciplinary infractions is quintessential 404(b) character evidence that has no place in this litigation." *Giles v. Rhodes*, No. 94 C 6385, 2000 WL 1425046, at *11 (S.D.N.Y. Sept. 27, 2000); *see Lewis v. Velez*, 149 F.R.D. 474, 481 (S.D.N.Y. 1993) ("While impeachment is indeed a proper purpose for

the introduction of prior acts, none of the acts chronicled in [the plaintiff's] disciplinary record reflect dishonesty or deceit.")

Bacot also asserts that Gomez's status as a gang leader and violent offender is relevant to why he could not be immediately taken to the healthcare unit for treatment while the facility was on a lockdown. (Dkt. 233 at ¶ 7). However, "[w]hile prisoner freedoms may be reasonably restricted at the discretion of prison officials during lockdowns, prisoners' constitutional right to have serious medical conditions treated is not suspended." *Hardy v. Wexford Health Sources, Inc.*, No. 12 C 6554, 2015 WL 1593597, at *15 (N.D. Ill. Apr. 2, 2015); (*see* Dkt. 177 at 8) (Stateville Medical Director observing that emergency medical situations trump lockdown status); *cf. Bell v. Wolfish,* 441 U.S. 520, 546–47 (1979) (a prison may be permitted some infringement on inmates' rights for reasons of institutional security). Indeed, the jury will be charged with balancing the feasibility of providing medical care during the lockdown with the severity of Gomez's medical condition. *See* Seventh Circuit Pattern Civil Federal Jury Instruction 7.13. Nevertheless, Gomez's status as a gang leader and violent offender is more prejudicial than probative in this regard. Fed. R. Evid. 403. And, as discussed above, the defense can introduce evidence that Stateville is a maximum-security facility and the effects of a facility lockdown without introducing evidence of Gomez's status as a gang leader or violent offender.

Plaintiff's Motion in Limine No. 3 is **GRANTED**.

## D. Plaintiff's Motion in Limine No. 4

Plaintiff's Motion in Limine No. 4 seeks to bar any testimony, evidence and argument regarding gang affiliations or aliases of any witness called by Gomez. (Dkt. 224). Gomez argues that any such evidence is not relevant to his claims and would be unfairly prejudicial. (*Id.* at ¶¶ 3–4).

Bacot contends that Gomez has acknowledged that he "calls the shots for the Latin Disciples and Gangster Disciples in prison and can control such gang activities." (Dkt. 234 at ¶ 4). Bacot further asserts that Plaintiff's witness, Calvin Clay, is a former member of the Gangster Disciples.[3] (*Id.* at ¶ 7). Thus, Bacot argues Clay's prior gang affiliation is admissible to show bias. *Regalado v. City of Chicago*, No. 96 C 3634, 1998 WL 919712, at *3 (N.D. Ill. Dec. 30, 1998). However, given that Clay is a *former* gang member and the extreme prejudice with allowing testimony of gang affiliations, especially here where Gomez's gang affiliation is unrelated to his deliberate indifference claim against Bacot, Plaintiff's Motion in Limine No. 4 is **GRANTED**.

## E. Plaintiff's Motion in Limine No. 5

Plaintiff's Motion in Limine No. 5 seeks an order permitting Gomez to treat Dr. Partha Ghosh, Lanel Palmer, and Andrew Pronger as adverse witnesses. (Dkt. 225). Rule 611 permits a witness to be examined with leading questions "when a party

---

[3] Bacot does not contend that witness Justin Wilcox is a current or former gang members. (Dkt. 234 at ¶ 7).

calls a hostile witness, an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2).

Palmer is a defendant in this case, and while he has reached a settlement in principle with Gomez, the settlement agreement has not been finalized. Nor has Palmer been dismissed from the case. Bacot concedes that Palmer may be considered an adverse party. (Dkt. 235 at ¶ 7).

Dr. Ghosh treated Gomez four days after the shooting incident. (Dkt. 225 at ¶ 2). During the relevant time period, Dr. Ghosh was the Stateville medical director. (Dkt. 218, Ex. A at 17). Pronger is an IDOC internal security officer, who interviewed Palmer, Bacot, Gomez and other individuals in connection with Gomez's injury. (Dkt. 225 at ¶3; Dkt. 217, Ex. A at 18–19). Since 2008, Bacot has been working as an LPN at Stateville. (Dkt. 147, Ex. A at 19). The Court finds that Dr. Ghosh and Pronger are sufficiently identified with Bacot to be considered adverse witnesses. Fed. R. Evid. 611(c)(2).

Plaintiff's Motion in Limine No. 5 is **GRANTED**. Gomez may treat Palmer, Pronger, and Dr. Ghost as adverse witnesses, pursuant to Fed. R. Evid. 611.

## F. Plaintiff's Motion in Limine No. 7

Plaintiff's Motion in Limine No. 7 seeks an order permitting him to appear at trial in minimum restraints and in street clothing. (Dkt. 227). Bacot objects, arguing that Gomez "is an obvious and apparent security risk" because he is a "moderate escape risk" and has known gang affiliations. (Dkt. 237 at ¶¶ 2–4).

Neither an inmate plaintiff nor his witnesses should be required to appear in shackles unless there is an "extreme" need. *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993) (citing *Illinois v. Allen*, 397 U.S. 337, 344 (1970)). The extreme-need standard requires the trial judge to determine if restraints are "necessary to maintain the security of the courtroom." *Lemons*, 985 F.2d at 358. While the trial judge has "wide discretion" to determine if the "extreme-need" standard has been met, the judge may not delegate this discretion to another party. *Id.*

Bacot has not demonstrated an "extreme need" for Gomez or his witnesses to appear in shackles. She has not provided any evidence, from IDOC for example, that Gomez has a "history of violence in the face of maximum security precautions." *Lemons*, 985 F.2d at 358 (citation omitted). Plaintiff's Motion in Limine No. 7 is **GRANTED**. Gomez may appear at trial unshackled and in street clothing. [4]

## G. Plaintiff's Motion in Limine No. 8

Plaintiff's Motion in Limine No. 8 seeks an order barring Bacot from presenting any testimony, evidence, or argument regarding any settlement offers, negotiations, or agreements among Gomez and any of the Defendants in this case. (Dkt. 228). Under Rule 408, evidence of statements made in an effort to reach a settlement "is not admissible—on behalf of any party—either to prove or disprove the validity or

---

[4] However, should IDOC or the Marshals Service wish to be heard on whether Gomez should be in restraints, the Court will hold a brief hearing on the matter prior to voir dire. *Id.* ("The preferred procedure is for the trial judge to hold a brief hearing before trial at which the state may try to prove that restraints are necessary."). If the Court determines that restraints are necessary, they will be employed in a manner that minimizes their prejudice. *Jones-Bey v. Rieger*, 76 F. App'x 735, 737 (7th Cir. 2003) ("District courts presiding over civil trials should ensure that shackles are necessary to maintain courtroom security, and if they are, that they are employed in a way that minimizes their prejudice.").

amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a).

Bacot contends that in light of the parties still memorializing the settlement among Gomez, Palmer, and Johnson, "[i]t cannot be overlooked that the circumstances suggest a thinly veiled attempt to dismiss the IDOC Defendants in exchange for their testimony on the stand." (Dkt. 238 at ¶¶ 2–3). Rule 408 includes an exception for admitting settlement statements for other purposes, "such as proving a witness's bias or prejudice." Fed. R. Evid. 408(b). Bacot has not proffered any evidence indicating that Palmer or Johnson will not testify truthfully at trial.

Plaintiff's Motion in Limine No. 8 is **GRANTED**. However, if either Palmer's or Johnson's testimony is inconsistent with their depositions, or otherwise demonstrates bias or prejudice toward Bacot, the Court will revisit the issue.

## H. Plaintiff's Motion in Limine No. 9 & Defendant's Motion in Limine No. 8

Plaintiff's Motion in Limine No. 9 seeks to bar Troy Dunlap and Dr. Ghosh from offering any expert testimony regarding Gomez's injury. (Dkt. 229). Dunlap is a Stateville correctional officer who testified at his deposition that Gomez's wound did not appear to be caused by a buckshot pellet; Dr. Ghosh is the physician who treated Gomez in the Stateville heath care unit four days after the shooting incident. (*Id.* at ¶¶ 2–3). Defendant's Motion in Limine No. 8 seeks to bar Dr. Ghosh from providing any testimony related to whether he would consider a variety of hypothetical injuries to be "serious." (Dkt. 218).

While only witnesses "retained or specially employed to provide expert testimony in the case" have to provide expert reports, a party must disclose the identity of *any* witness who will provide expert testimony under Fed. R. Evid. 702, 703, or 705. Fed. R. Civ. P. 26(a)(2)(C). Bacot has not disclosed any expert witnesses. (Dkt. 229 at ¶ 4). Nevertheless, she contends that despite not disclosing either Dr. Ghosh or Dunlap as an expert witness, Gomez will not be surprised or prejudiced by their expert testimony. (Dkt. 239 at ¶¶ 4, 6–8). But the federal rules "demand this formal designation" of witnesses expected to testify as experts. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757 (7th Cir. 2004). Indeed, the "[f]ormal disclosure of experts is not pointless," and the failure to do so could "prejudice[ ] [Gomez] because there are countermeasures that could have been taken that are not applicable to fact witnesses, such as attempting to disqualify the expert testimony on grounds set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), retaining rebuttal experts, and holding additional depositions to retrieve the information not available because of the absence of a report." *Id.* at 757–58. Nevertheless, lay witness opinion testimony is allowed without prior disclosure if the testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

### 1. *Dunlap*

Gomez contends that Dunlap should be precluded from testifying "whether Gomez's injury was consistent with a buckshot wound." (Dkt. 229 at ¶ 6). The Court agrees. While Dunlap may describe Gomez's wound, Dunlap may not offer an opinion as to whether Gomez's injury was consistent with a buckshot wound. (*See* Dkt. 239, Ex. A (Dunlap Dep.) at 55–84). Such an opinion is not within the usual and ordinary experience of the average person. *Cf. Reyna v. Lowe's HIW, Inc.*, No. 13 C 111, 2015 WL 5142086, at *7 (D. Idaho Sept. 1, 2015) ("a layperson may testify to the causation of medical symptoms of injuries where such causation is within the usual and ordinary experience of the average person").

### 2. *Dr. Ghosh*

"The testimony of treating physicians presents special evidentiary problems that require great care and circumspection by the trial court." *Williams v. Mast Biosurgery USA, Inc.*, 644 F.3d 1312, 1316 (11th Cir. 2011). "A treating physician is not considered an expert witness if he or she testifies about observations based on personal knowledge, including the treatment of the party." *Davoll v. Webb*, 194 F.3d 1116, 1138 (10th Cir. 1999); *accord Blameuser v. Hasenfang*, 345 F. App'x 184, 187 (7th Cir. 2009). However, the doctor "is providing expert testimony if the testimony consists of opinions based on 'scientific, technical, or other specialized knowledge' regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation." *Musser*, 356 F.3d at 756 n.2. "Put another way, it is only when the treating physician gives opinions beyond the scope of his own obser-

vation and treatment that he is considered a 'retained' expert for purposes of Rule 26(a)(2)." *Zurba v. United States*, 202 F.R.D. 590, 592 (N.D. Ill. 2001).

Gomez asserts that Dr. Ghosh should be prohibited from testifying about "(i) the severity of Gomez's condition; (ii) the harm (including pain and suffering) that could result from lack of medical care; (iii) whether providing treatment was feasible; (iv) the actual harm caused by lack of medical care; (v) whether Gomez had a serious medical need that required immediate treatment; (vi) whether a nurse practitioner would know or should have known of a substantial risk of harm to a person's health from an untreated puncture wound caused by a shotgun pellet; and (vii) whether Bacot's actions were "reasonable" in addressing Gomez's injury." (Dkt. 229 at ¶ 5).

Under Rule 701, Dr. Ghosh may testify about his observations of Gomez made during the course of treatment, as long as the testimony is based on his personal knowledge and was not acquired or developed in anticipation of trial. *Zurba*, 202 F.R.D. at 591 ("A treating physician is not considered a retained expert for purposes of Rule 26(a)(2), and thus need not submit a report, if his testimony is based on observations made during the course of treatment, the testimony was not acquired or developed in anticipation of litigation or for trial, and the testimony is based on personal knowledge.") (citation omitted). Thus, for example, Dr. Ghosh may testify about the severity of Gomez's condition, the cause and permanency of Gomez's injury, and whether his injury required immediate care, as long as these opinions were a necessary part of treatment and were formed during, and as part of his treatment of Gomez. *Id.* at 592 ("The fact that a treating doctor proposes to give an opinion re-

garding the causation and permanency of his patient's injury does not by itself make him a retained expert for purposes of Rule 26(a)(2). Indeed, it is common for a treating physician to consider his patient's prognosis as well as the cause of the patient's injuries. . . . The same may be true regarding the permanency of the plaintiff's condition. If the physician formed such opinions during, and as part of, his treatment of the patient, they are no different from any other opinion—such as a diagnosis or decisions regarding the proper treatment—that he formed during the course of treatment.") (citations omitted). On the other hand, Dr. Ghosh may not state an opinion on what Bacot should have known about Gomez's injuries or whether her actions were reasonable. Nor may he opine as to the hypothetical pain and suffering that could result from lack of medical care. *Williams*, 644 F.3d at 1317–18 ("when a treating physician's testimony is based on a hypothesis, not the experience of treating the patient, it crosses the line from lay to expert testimony"). Thus, Dr. Ghosh may not testify whether he would consider a variety of hypothetical injuries to be "serious."[5]

In short, so long as Dr. Ghosh's testimony is limited to observations and opinions he developed during and as part of his treatment of Gomez, his testimony will be permitted. The Court will require this foundation to be established before allowing Dr. Ghosh to adduce the opinions at issue. For all of the above reasons, Plaintiff's

---

[5] Gomez agrees that such testimony would constitute expert opinion and should not be admitted because neither party has designated Dr. Ghosh as an expert witness. (Dkt. 248 at 1–2).

Motion in Limine No. 9 is **GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART**. Defendant's Motion in Limine No. 8 is **GRANTED**.

## I. Defendant's Motion in Limine No. 1

Defendant's Motion in Limine No. 1 seeks to bar Gomez, in effect, from introducing any evidence that Bacot "could be liable or responsible for any time period" after her encounters with Gomez on May 16, 2009. (Dkt. 211). Bacot argues that the Court should preclude "any evidence that Nurse Bacot was responsible for the Plaintiff not being taken to the healthcare unit between May 16, 2009, and May 20, 2009, since the evidence shows that the prison was on lockdown during that time, that the Plaintiff was, in fact scheduled for an appointment on May 18th, which did not occur because of the lockdown, and the Plaintiff made no further complaints to Nurse Bacot at any time after May 16, 2009." (*Id.* at ¶ 8).

Gomez agrees that Bacot "can be held liable only for her individual conduct," but contends "that issue is distinct from the question of causation." (Dkt. 241 at 5) (citation omitted). The Court agrees. First, there is sufficient evidence for the jury to find that Bacot could have transferred Gomez to the healthcare unit during the lockdown. Despite the lockdown, the two inmates involved in the altercation were taken to the healthcare unit. (Dkt. 147, Ex. G (Palmer Dep.) at 159–60). And Bacot has admitted "that she can seek clearance to transfer inmates to the medical unit at Stateville during a lockdown." (Dkt. 177 at 5). The Stateville Medical Director has acknowledged that emergency medical situations trump lockdown status. (*Id.* at 8); *see Hardy*, 2015 WL 1593597, at *15 ("While prisoner freedoms may be reasonably

restricted at the discretion of prison officials during lockdowns, prisoners' constitutional right to have serious medical conditions treated is not suspended.").

Second, it will be up to the jury to determine whether Bacot's conduct caused harm to Gomez. *See Suzik v. Sea-Land Corp.*, 89 F.3d 345, 348 (7th Cir. 1996) ("A defendant's conduct is the proximate cause of a plaintiff's injury if all events following that conduct, including any actions by the plaintiff, are its reasonably foreseeable results."); *see also Jones v. City of Chicago*, 856 F.2d 985, 993 (7th Cir. 1988) ("principles of legal causation [ ] are as applicable to constitutional torts as to common law torts"). Indeed, the jury will be instructed that "[Gomez] must prove by a preponderance of the evidence that [Bacot] was personally involved in the conduct that [Gomez] complains about" and she is not liable "for what other employees did or did not do." Seventh Circuit Pattern Civil Federal Jury Instruction 7.02. The jury must also find "by a preponderance of the evidence" that "[Bacot] was deliberately indifferent to [Gomez's] serious medical need" and "[her] conduct *caused* harm to [Gomez]." Seventh Circuit Pattern Civil Federal Jury Instruction 7.12 (emphasis added).

Defendant's Motion in Limine No. 1 is **DENIED**.

## J. Defendant's Motion in Limine No. 2

Defendant's Motion in Limine No. 2 seeks to bar Gomez from introducing any evidence, by testimony or documents, that were not previously disclosed. (Dkt. 212). Rule 26 requires a party to disclose all witnesses and documents that it plans to introduce at trial. Fed. R. Civ. P. 26(a)(3). Under Rule 37, "[i]f a party fails to provide

information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Gomez asserts that he does not anticipate introducing any undisclosed evidence, but contends that the Court should decide the issue at trial on a case-by-case basis, "depending on whether the [party] would suffer prejudice" if the evidence were introduced. (Dkt. 242 at 1) (quoting *Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 780–81 (N.D. Ill. 2010)).

Defendant's Motion in Limine No. 2 is **GRANTED**. The parties are precluded from presenting arguments or evidence that they have not properly disclosed during discovery. Nevertheless, in the unlikely event that this issue is raised at trial, the Court will exercise its discretion to evaluate whether the undisclosed evidence is admissible based on the applicable standards.

## K. Defendant's Motion in Limine No. 3

Defendant's Motion in Limine No. 3 seeks to preclude Gomez from testifying (a) that Dr. Ghosh told Gomez he should have been brought to the healthcare unit the day he was shot to prevent infection; (b) that he was under the care of Bacot at any time after May 16, 2009; and (c) about his own lay medical opinions. (Dkt. 213).

### 1. Dr. Ghosh's Statement

Gomez's statement that Dr. Ghosh told him he should have been brought promptly to the healthcare unit is inadmissible hearsay. Gomez does not intend, during his case-in-chief, to introduce evidence of Dr. Ghosh's out-of-court state-

ments that are the subject of this motion. (Dkt. 243 at 1). Defendant's motion is **GRANTED** as to this issue. Nevertheless, if Dr. Ghosh testifies in a manner inconsistent with his out-of-court statements, Gomez may cross-examine Dr. Ghosh concerning the prior statements or introduce evidence of them on rebuttal. Fed. R. Evid. 613.

### 2. Testimony Concerning Bacot's "Responsibility"

As discussed above, there is sufficient evidence for the jury to find that Bacot could have transferred Gomez to the healthcare unit during the lockdown. And the issue of causation is one for the jury to decide. Defendant's motion is **DENIED** as to this issue.

### 3. "Medical Opinions" by Gomez

As discussed above, a lay witness "may testify to relevant evidence that is "rationally based on the perception of the witness and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006) (alteration omitted) (citing Fed. R. Evid. 701). Thus, Gomez may testify that he believed he was developing an infection at the wound site if such opinion was based on his own perception and not based on any specialized knowledge. Indeed, whether a wound is infected is within the ordinary experience of the average person. *See Reyna*, 2015 WL 5142086, at *7 ("a layperson may testify to the causation of medical symptoms of injuries where such causation is within the usual and ordinary experience of the average person"). Even if "infected" has a specific meaning to a medical expert, a reasonable

jury can understand a lay use of the word. *Cf. Farfaras*, 433 F.3d at 565 ("While 'depressed' does have a medical definition, a reasonable jury can be expected to understand the difference between lay use of an adjective and an expert's use of the same word to describe a specific psychological condition."). Defendant's motion is **DENIED** as to this issue.

Defendant's Motion in Limine No. 3 is **GRANTED IN PART AND DENIED IN PART**.

## L.  Defendant's Motion in Limine No. 4

Defendant's Motion in Limine No. 4 seeks to bar Gomez from testifying or providing any argument or evidence of any litigation, lawsuits, claims, discipline, or punishment against or by Bacot, her former employer Wexford Health Sources, or Dr. Ghosh. (Dkt. 214). Gomez does not intend to introduce any such evidence in his case-in-chief, but contends that he should be able, on cross-examination, to offer prior "bad acts" to show bias or a witness's character for truthfulness. (Dkt. 244 at 1–2). However, Gomez fails to identify any specific details as to what evidence he would seek to offer that would attack a witness's character for truthfulness. *See* Fed. R. Evid. 608. And "bad acts" evidence offered for any other reason is prohibited and prejudicial. Fed. R. Evid. 403, 404(a)(1).

Defendant's Motion in Limine No. 4 is **GRANTED**.

## M. Defendant's Motion in Limine No. 5

Defendant's Motion in Limine No. 5 seeks to preclude Gomez from testifying or providing any evidence related to the photograph of his arm taken by IDOC Inter-

nal Affairs on May 20, 2009. (Dkt. 215). Bacot contends that such evidence is irrelevant and has no probative value because the critical consideration is her "*subjective* impression and evaluation of the Plaintiff's arm when she saw him and observed his arm on May 16, 2009." (*Id.* at ¶¶ 2–3) (emphasis in original). Further, the photograph is misleading given Gomez's claim that he removed a piece of buckshot pellet from his arm between the time that Bacot saw him and the photograph was taken. (*Id.* at ¶ 3). Gomez asserts that the photograph is a critical piece of evidence relevant to his deliberate indifference claim. (Dkt. 245 at 1–2).

The Court finds that the photograph is relevant to Gomez's claim. Gomez will testify that his skin was broken, the wound was bleeding, and the area around it was bruised. (Dkt. 245 at 1). He will assert that Bacot's delay in treating the wound caused him pain and suffering. (*Id.*). Thus, the photograph is relevant because it has a "tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401(a). It will be up to the jury to determine the weight to be given the photograph after considering all the evidence.

Defendant's Motion in Limine No. 5 is **DENIED**.

## N. Defendant's Motion in Limine No. 6

Defendant's Motion in Limine No. 6 seeks to preclude Gomez from offering Andrew Pronger's opinion that "each of the individuals whom he interviewed in connection with the investigation of the occurrence in this matter 'all covered for themselves' to avoid trouble." (Dkt. 216 at ¶ 1). Bacot contends that "Pronger's inconsistent and subjective impressions of the statements of the witnesses in this case,

and particularly of the sole remaining Defendant, Nurse Bacot, is not relevant to the jury's consideration of whether Nurse Bacot acted with deliberate indifference to a serious medical need of the Plaintiff on May 16, 2009." (*Id.* at ¶ 4). "Gomez does not oppose [this] request, but notes that the rationales for exclusion of such evidence apply equally to both parties." (Dkt. 246).

Defendant's Motion in Limine No. 6 is **GRANTED**.

## O. Defendants Motion in Limine No. 9

Defendant's Motion in Limine No. 9 seeks to bar Gomez from providing testimony or other evidence regarding the following topics: (a) lay opinions on the ultimate issue of whether Bacot was deliberately indifferent to a serious medical need by Gomez; (b) liability insurance; and (c) using documentary exhibits during opening statements. (Dkt. 220).

### 1. Lay Opinions

Gomez does not object to an order barring lay witnesses for either party from offering strictly opinion testimony as to the ultimate issue of deliberate indifference. (Dkt. 249 at 1–2). Defendant's motion is **GRANTED** as to this issue.

### 2. Liability Insurance

Gomez does not intend to introduce evidence as to Bacot's insurance or indemnification during his case-in-chief. (Dkt. 249 at 2). Defendant's motion is **GRANTED** as to this issue.

Nevertheless, Bacot is cautioned that if she "opens the door by presenting evidence of [her] financial condition, [ ] evidence of indemnification is permissible." *Hill v. City of Chicago*, No. 06 C 6772, 2011 WL 3205304, at *4 (N.D. Ill. July 28, 2011); *see Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab."). Thus, if Bacot offers any evidence of her financial condition, Gomez may present evidence that a third party is paying her legal expenses and any compensatory damage award.

Bacot notes that Illinois law precludes insurance policies from covering punitive damages. (Dkt. 259 at ¶ 3). Thus, if she decides to introduce evidence of her financial condition, the Court will give a limiting instruction—both prior to her testimony on this issue and before deliberations begin—that her finances only pertain to punitive damages. *Hill*, 2011 WL 32054304, at *4; *see Townsend v. Benya*, 287 F. Supp. 2d 868, 874 (N.D. Ill. 2003) ("to the extent that information of Defendants' finances must be considered in regard to punitive damages . . . , a cautionary instruction should be given, informing the jury that Defendants' finances address punitive damages only"); *see also* Seventh Circuit Pattern Civil Federal Jury Instructions 7.23 and 7.24.

### 3. Using Exhibits During Opening Statements

Gomez opposes this limitation, arguing that he should be allowed to use the May 20, 2009 photograph of his arm taken by IDOC investigators. (Dkt. 249 at 2–3). Bacot counters that until the proper foundation is laid for the photograph, it should

not be permitted before the jury, in opening statements or otherwise. (Dkt. 259 at ¶ 7).

The Court finds that using the photograph of Gomez's arm as a demonstrative aid during opening statements will aid the jury in understanding the scope of the case. *Jordan v. Binns*, 712 F.3d 1123, 1134 (7th Cir. 2013) (finding no error in a vehicular accident negligence case with the district court allowing counsel to use the crash report "as a demonstrative aid during opening statements"). Bacot does not dispute the authenticity of the photograph, which was produced by IDOC in this matter, or that it fails to accurately depict Gomez's arm on May 20, 2009. And, as discussed above, the photograph is relevant to Gomez's claim. In any event, the jury will be instructed that counsels' opening statements are not evidence. *See* Seventh Circuit Pattern Civil Federal Jury Instruction 1.06. Thus, even on the unlikely possibility that the photograph will not be admitted during trial, the curative instruction protects against any prejudice. *See Jordan*, 712 F.3d at 1135 ("Providing a curative instruction protects against any prejudice resulting from a lawyer's reference during opening statements to evidence that ultimately is not admitted during trial.").

Defendant's motion is **DENIED** as to this issue.

Defendant's Motion in Limine No. 9 is **GRANTED IN PART AND DENIED INN PART**, as described above.

### III. CONCLUSION

For the reasons stated above, Plaintiff's Motion in Limine Nos. 1, 2, 3, 4, 5, 7, and 8 [221, 222, 223, 224, 225, 227, 228] are **GRANTED**; Plaintiff's Motion in Limine No. 9 [229] is **GRANTED IN PART AND DENIED IN PART**; Defendant's Motion in Limine Nos. 1 and 5 [211, 215] are **DENIED**; Defendant's Motion in Limine Nos. 2, 4, 6, and 8 [214, 216, 218] are **GRANTED**; and Defendant's Motion in Limine Nos. 3 and 9 [213, 219] are **GRANTED IN PART AND DENIED IN PART**.

E N T E R:

Dated: January 19, 2016

_____
MARY M. ROWLAND
United States Magistrate Judge