UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAUL C. GOMEZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>LANEL PALMER, DWAYNE JOHNSON, and ANDRIA BACOT,<br><br>　　　　Defendants. | No. 11 C 1793<br><br>Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Raul C. Gomez brings this civil rights lawsuit, pursuant to 42 U.S.C. § 1983, against Defendants Lanel Palmer, Dwayne Johnson, and Andria Bacot. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and this case is set for trial on January 25, 2016. Bacot has moved to exclude the opinions and testimony of Scott E. Glaser, M.D. For the reasons set forth below, the Motion is granted in part and denied in part.

## I. BACKGROUND

On May 16, 2009, Illinois prisoner Raul Gomez sustained a gunshot wound when Correctional Officer Dwayne Johnson fired a round of buckshot in Gomez's direction as prison guards were physically separating two unarmed inmates who had gotten into a scuffle. Gomez alleges that Officer Johnson used excessive force against him

and that Sergeant Lanel Palmer and Nurse Andria Bacot were deliberately indifferent to his injuries.

On March 3, 2015, the Court denied Defendants' Motion for Summary Judgment, finding sufficient evidence for a jury to conclude that Bacot's "failure or refusal to provide Gomez with *any* medical treatment for a bleeding gunshot wound was so plainly inappropriate as to permit the inference that the Defendants intentionally or recklessly disregarded his needs." (Dkt. 177 at 20) (emphasis in original) (citation omitted). On June 25, 2015, the Court facilitated a settlement conference, during which the parties made significant progress. (Dkt. 183). On July 14, 2015, the parties reported that Plaintiff has reached a settlement with Defendants Palmer and Johnson.[1] (Dkt. 184). Thus, the only remaining claim is for deliberate indifference to a serious medical need against Bacot.

## II. DISCUSSION

### A. Legal Standard for *Daubert* Motions

Federal Rule of Evidence 702 provides that

> a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and

---

[1] Palmer and Johnson are currently in the process of memorializing a settlement agreement with Gomez. (Dkt. 225 at 2 n.1).

> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court has tasked the district court with the responsibility for "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). Indeed, *Daubert* "imposes a special gatekeeping obligation on trial judges with regard to scientific expert testimony." *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013). While scientific evidence need not have "general acceptance," the district court must determine whether the evidence is relevant and reliable before allowing it into evidence. *Daubert*, 509 U.S. at 588–89; *Lees*, 714 F.3d at 521. Further, because "there are many different kinds of experts, and many different kinds of expertise, . . . the gatekeeping inquiry must be 'tied to the facts' of a particular case." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999) (quoting *Daubert*, 509 U.S. at 591).

> The *Daubert* inquiry requires a court to determine:
>
> First, the expert must be qualified by knowledge, skill, experience, training, or education; second, the proposed expert testimony must assist the trier of fact in determining a relevant fact at issue in the case; third, the expert's testimony must be based on sufficient facts or data and reliable principles and methods; and fourth, the expert must have reliably applied the principles and methods to the facts of the case.

*Lees*, 714 F.3d at 521–22; *see* Fed. R. Evid. 702. In analyzing the reliability of proposed expert testimony, the role of the court is to determine whether the expert is qualified in the relevant field and to examine the methodology the expert has used in reaching his conclusions. *See Kumho*, 526 U.S. at 152. While "extensive academic

and practical expertise" in an area is certainly sufficient to qualify a potential witness as an expert, *Bryant v. City of Chicago*, 200 F.3d 1092, 1098 (7th Cir. 2000), "Rule 702 specifically contemplates the admission of testimony by experts whose knowledge is based on experience," *Walker v. Soo Line R.R.*, 208 F.3d 581, 591 (7th Cir. 2000); *see Kumho*, 526 U.S. at 156 ("[N]o one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). The party seeking to introduce an expert's opinion bears the burden of establishing, by a preponderance of the evidence, that it is admissible. *Daubert*, 509 U.S. at 593 n.10; Fed. R. Evid. 702, advisory committee's note (2000). Nevertheless, the Rule 702 inquiry is flexible and courts may exercise significant discretion. *Daubert*, 509 U.S. at 594; *Lees*, 714 F.3d at 518.

**B. Dr. Glaser's Opinions**

On May 14, 2014, Dr. Glaser submitted an expert report (Dkt. 250, Ex. A), in which he offered these opinions:

> <u>Serious Medical Condition</u>: A puncture wound from a shotgun pellet—such as the one suffered by Gomez—is a serious medical condition that should be treated and evaluated emergently by a physician. "Following such a penetrating wound, the most significant concerns are bleeding, arterial trauma, infection, and trauma to nerves." (*Id.* at 3–4).
>
> <u>Failure to Act</u>: Based on his "experience as a medical professional, which includes working with licensed practical nurses," a licensed practical nurse—such as Bacot—"knew or should have known the risks to Mr. Gomez from an untreated penetrating wound from a shotgun (including prolonged pain) and failed to act in disregard of these risks." Bacot "should have taken Mr. Gomez to a medical doctor immediately upon learning of and viewing Mr. Gomez's wound." (*Id.* at 4–5).
>
> <u>Pain Caused by Treatment Delay</u>: "Mr. Gomez suffered pain secondary to his serious medical condition," and a doctor could have treated the pain with "appropriate medical attention" through the debridement of

> the shotgun pellet "with the use of local anesthesia" and the use of "analgesics for his pain." (*Id.* at 5). "Had Mr. Gomez been taken to a medical doctor immediately following his injury, Mr. Gomez would not have experienced as much pain over this four-day period as he did in the absence of treatment." (*Id.*).

Bacot contends that Dr. Glaser is not qualified to act as an expert in this case, used improper methodology, and impermissibly offers a legal conclusion. (Dkt. 219).

### *1. Qualifications*

Dr. Glaser has almost 30 years of education, experience, and expertise in the diagnosis, treatment, and management of pain, including pain secondary to puncture wounds. (Dkt. 250, Exs. A & B). He graduated from the Indiana University School of Medicine in 1986, did his internship at Evanston Hospital, and completed his residency and fellowship in anesthesiology at Northwestern Memorial Hospital. (*Id.*). He worked as an anesthesiologist and developed pain clinics, first in Michigan until 1992, then in Illinois until 2000. (*Id.*). In 2001, Dr. Glaser was a founding member of the Pain Specialists of Greater Chicago, and he currently serves as the President of the physician group, specializing in the diagnosis, treatment, and management of pain. (*Id.*).

Dr. Glaser has been certified by the American Board of Anesthesiology since 1996. (Dkt. 250, Exs. A & B). Since 2006, he has been a diplomat of the American Board of Anesthesiology's pain management board, and has been asked to be an examiner for this board. (*Id.*). He was elected twice to the board of the American Society of Interventional Pain Physicians, has served as its President, and currently

serves as its Vice–President. (*Id.*). Dr. Glaser has authored or co-authored 11 peer-reviewed articles on these topics. (*Id.*).

In addition to his general experience with the diagnosis, treatment, and management of pain, Dr. Glaser has specific experience with "penetrating wounds from foreign objects and treat[ing] the pain resulting from these injuries." (Dkt. 250, Ex. A at 1). At his deposition, Dr. Glaser described these experiences:

> [W]orking in the ER at Evanston during my internship rotations, there were gunshot wounds, pellets, knife wounds. And then at Northwestern, taking care of patients in the operating room who came up for debridement, secondary to similar puncture wounds, similar causes. And then giving general anesthesia, which I did . . . —from '92 to 2001, just taking care of the patients that the general surgeons had to bring to the operating room.

(Dkt. 219, Ex. A (Glaser Dep.) at 50). During his tenure at Evanston Hospital, he "treat[ed] the patients [suffering from puncture wounds], inspect[ed] the wounds, prescribe[ed] antibiotics, [and] started IV's." (*Id.* at 52). In his current practice, Dr. Glaser treats "cases of chronic pain secondary to [ ] penetrating injuries or wounds that have damaged nerves and caused permanent pain." (*Id.* at 51).

In assessing Dr. Glaser's opinions, the Court must first determine whether he is qualified to offer each of the opinions he is proffering. *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2015 WL 1043321, at *2 (N.D. Ill. Mar. 5, 2015); *see Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010). ("The question we must ask is not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for him to answer a specific question.") (citation and alteration omitted). Bacot contends that Dr. Glaser is not qualified to opine on the seriousness of

Gomez's wound because "the extent of his experience with puncture or penetrating wounds" was limited to his pre-2002 administration of anesthesia while surgeons actually treated the wounds and his "current practice does not involve treating wounds from foreign objects." (Dkt. 219 at ¶ 12). But the fact that Dr. Glaser is not a surgeon "does not automatically prevent him from testifying" about the seriousness of puncture wounds. *Heard v. Illinois Dep't of Corr.*, No. 06 C 0644, 2012 WL 2524748, at *2 (N.D. Ill. June 29, 2012). In *Heard*, Dr. Glaser opined whether and when surgery should be performed to repair inguinal hernias. *Id.* The defendant, Wexford Health Services, sought to exclude his opinion, arguing that "Dr. Glaser's medical experience as a specialist in pain management does not extend to the diagnosis and treatment of hernias." *Id. Heard* rejected this argument, concluding that "[t]he fact that Dr. Glaser is not a surgeon does not automatically prevent him from testifying about hernias and their treatment." *Id.* Instead, the court found that Dr. Glaser was qualified because "he has diagnosed hernias, referred patients to surgeons for herniorrhaphy, administered anesthesia during nearly 100 herniorrhaphies and seen patients with post-operative pain from herniorrhaphies." *Id.* The same reasoning applies here—Dr. Glaser has diagnosed and treated puncture wounds as an internist, provided operating room anesthesia in connection with the debridement of puncture wounds, and treated pain secondary to puncture wounds as a pain specialist, which he continues to do in his current practice. (Glaser Dep. at 50–52).

Bacot seeks to distinguish *Heard*, arguing that "Dr. Glaser's experience pertinent to this case is far more limited that that noted by the court in *Heard*. . . . In contrast to *Heard*, Dr. Glaser did not offer any testimony in this case that his current practice involves treating wounds from foreign objects." (Dkt. 260 at ¶ 13). That is not accurate. Dr. Glaser testified that he continues to treat pain secondary to puncture wounds. (Glaser Dep. at 51).

Bacot also contends that Dr. Glaser is not qualified "to opine on the treatment provided by a *nurse* in the prison setting." (Dkt. 219 at ¶ 13) (emphasis in original). On the contrary, Dr. Glaser has experience working with licensed practical nurses, (Dkt. 250, Ex. A at 4), and the Seventh Circuit has affirmed such qualifications in a similar case, *Gayton*, 593 F.3d at 612–13, 618 (reversing district court and finding physician qualified to opine as to the standard level of care for nurses); *see also McDowell v. Brown*, 392 F.3d 1283, 1296 (11th Cir. 2004) ("The standard of care applicable to nurses is universal, and does not diminish when the setting is a jail rather than hospital. . . . A physician's area of expertise necessarily encompasses the standard of care applicable to nurses."). In sum, the Court finds that Dr. Glaser's clinical training and professional practice have given him experience in the treatment of, and the management of pain resulting from puncture wounds. Accordingly, he has the necessary medical knowledge, experience, training, and education to qualify him as an expert.

*2. Methodology*

In forming his opinions in this case, Dr. Glaser reviewed Gomez's medical records from May 16 to 20, 2009, the photograph of Gomez's wounds taken on May 20, 2009, and the deposition testimony of Gomez, Bacot, and Dr. Partha Ghosh, Gomez's treating physician. (Dkt. 250, Ex. A at 3). In performing its gatekeeping requirement, the Court must verify that "an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho*, 526 U.S. at 152. Thus, "the Court must determine whether the expert's methodology in reaching his conclusions is scientifically reliable." *Heard*, 2012 WL 2524748, at *3. Bacot contends that Dr. Glaser's methodology is flawed in a number of respects.

First, Bacot argues that Dr. Glaser failed to "review or consider the deposition testimony of the IDOC correctional officers deposed in this case," thus making his opinions unreliable because they are based on insufficient data and an insufficient investigation. (Dkt. 219 at ¶¶ 22, 34, 36, 37). But "[n]either *Daubert* nor the Federal Rules of Evidence requires an expert to review all of the facts, only a 'sufficient' amount is required." *Hoskins v. Trucking*, No. 07 C 72, 2010 WL 4000123, at *12 (N.D. Ind. Oct. 12, 2010). "The question is whether the expert considered enough information to make the proffered opinion reliable." *Id.* Here, Dr. Glaser reviewed the medical records, deposition testimony from the medical personnel, and a medical treatise on the removal and debridement of foreign objects from a wound. (Dkt.

250, Ex. A at 3–4). Dr. Glaser was aware that he had not reviewed the testimony of correctional staff and observed, correctly, that a correctional "officer is not a medical professional, you know . . . I'd have to take [their testimony] in that light." (Glaser Dep. at 65). After reviewing the pertinent information, Dr. Glaser relied on his education, experience, and clinical expertise to arrive at his opinions. (Dkt. 250, Ex. A at 3–4). The Seventh Circuit has found such methodology appropriate in a § 1983 case alleging insufficient medical care. *Gayton*, 593 F.3d at 618 (analysis of a cold record, consisting of contemporaneous medical records and deposition transcripts, was an appropriate methodology); *see also Heard*, 2012 WL 2524748, at *3 ("[T]he accepted methodology in clinical medicine [is] reliance on a patient's medical history and available medical treatments.") (citing *Cooper v. Carl A. Nelson & Co.*, 211 F.3d 1008, 1021 (7th Cir. 2000)).

Second, Bacot contends that the Seventh Circuit requires Dr. Glaser to perform an independent investigation. (Dkt. 219 at ¶ 37) (citing *Brown v. Burlington N. Santa Fe Ry. Co.*, 765 F.3d 765 (7th Cir. 2014)). In *Brown*, a railroad employee brought an action under the Federal Employers' Liability Act, alleging that his employer negligently caused him to suffer from cumulative trauma disorder. 765 F.3d at 767–68. "Cumulative trauma disorder refers not to one specific injury, but to numerous disorders caused by the performance of repetitive work over a long period of time" and "requires . . . expert testimony about causation." *Myers v. Illinois Cent. R. Co.*, 629 F.3d 639, 643 (7th Cir. 2010) (citation omitted). Therefore, in these situations, the expert must perform a differential analysis after a full investigation be-

fore ruling out other possible causes of an injury. *Brown*, 765 F.3d at 774–775; *Myers*, 629 F.3d at 644–45. Here, to the contrary, Dr. Glaser is not determining the causation of Plaintiff's injury. Further, "whether an expert considered all of the relevant factors goes to the weight to be afforded the expert's opinion, not its admissibility." *Padilla v. Hunter Douglas Window Coverings, Inc.*, 14 F. Supp. 3d 1127, 1146 (N.D. Ill. 2014) (citing *Daubert*, 509 U.S. at 596; *Lees*, 714 F.3d at 526); *see Tilstra v. Bou-Matic, LLC*, No. 12 C 827, 2014 WL 4662483, at *7 (W.D. Wis. Sept. 19, 2014), *aff'd sub nom.*, *Tilstra v. BouMatic LLC*, 791 F.3d 749 (7th Cir. 2015) ("Although [the defendant] proffers a laundry list of factors that it contends [the plaintiff's expert] should have considered, these factors all affect the weight to be given to [the expert's] testimony, not its admissibility.").

Third, Bacot argues that Dr. Glaser's methodology is flawed because he accepted Gomez's version of events and rejected Bacot's. (Dkt. 219 at ¶ 29). In his deposition, Dr. Glaser explained that he credited Gomez's account over Bacot's because (1) Bacot's description of the wound as a superficial scratch was inconsistent with Gomez's treatment four days later, (2) patients tend to recall events better than third parties, and (3) the photograph of Gomez's arm showed his injury. (Glaser Dep. at 61–62, 68–69, 73). There is nothing improper here. "Experts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence. That does not mean that the expert has made impermissible credibility determinations that preclude him from testifying." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006) (citations omitted).

Here, Dr. Glaser based his opinions on medical records, depositions, and his experience and expertise in the medical field. *See Richman*, 415 F. Supp. 2d at 942. ("The question is not whether the opinion is based on assumptions, but whether there is some factual support for them."). Bacot is free to attack the weight of Dr. Glaser's opinions on cross-examination. *See id.* ("[I]t is for the jury, properly instructed, to determine the credibility of the witnesses and thus the weight to be given to the expert opinion."); *see also Heard*, 2012 WL 2524748, at *3 ("*Daubert* acknowledged the continuing vital role that vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof, are to play in the trier of fact's ultimate evaluation of admissible but shaky evidence.") (citation omitted).

Fourth, Bacot asserts that Dr. Glaser's opinions are unreliable because his report is inaccurate and incomplete. (Dkt. 219 at ¶¶ 15–39). For examples, Bacot states that Dr. Glaser (1) misapprehended Gomez's pain and Bacot's knowledge of it; (2) relied on a photograph taken four days after Bacot saw Gomez and after Gomez had removed the pellet from his arm; (3) did not recall portions of Bacot's deposition testimony when questioned at his own deposition; and (4) relied on a fact—which Bacot contends is incorrect—regarding Gomez's transportation to the healthcare unit. (*Id.* at ¶¶ 23, 27–29, 31). None of this undermines Dr. Glaser's methodology. *See Heard*, 2012 WL 2524748, at *3 ("The *Daubert* analysis of an expert witness's reliability rests on the expert's process rather than his conclusions."). Instead, these matters can form the basis of a vigorous cross-examination. *See*

*Cooper*, 211 F.3d at 1021 ("the accuracy and truthfulness of the underlying medical history [relied on by the expert witness] is subject to meaningful exploration on cross-examination and ultimately to jury evaluation"); *Sutton v. Wexford Health Sources, Inc.*, No. 10 C 8137, 2014 WL 551546, at *3 (N.D. Ill. Feb. 12, 2014) ("[The medical expert witness's] failure to address [the defendant's] interrogatory answers in her report goes to the weight that a jury will assign her testimony and not its admissibility."). Ultimately, "[t]he question of whether the expert is credible or whether his or her theories are correct given the circumstances of a particular case is a factual one that is left for the jury to determine after opposing counsel has been provided the opportunity to cross-examine the expert regarding his conclusions and the facts on which they are based." *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000).

Finally, Bacot contends that Dr. Glaser's opinions are unreliable because he has never met, spoken with, interviewed, or evaluated Gomez. (Dkt. 219 at ¶ 22). It is not uncommon, however, for a clinical medicine expert to "arrive at his conclusions based solely on an examination of a cold record." *Gayton*, 593 F.3d at 618 ("In terms of his methodology, [the expert witness] had to arrive at his conclusions based solely on an examination of a cold record, consisting of Taylor's autopsy report, her medical records, and the testimony of the prison guards and other witnesses."); *see also Walker*, 208 F.3d at 586 ("Medical professionals reasonably may be expected to rely on self-reported patient histories."); *Sutton*, 2014 WL 551546, at *2 ("[The medical

expert witness's] use of [the plaintiff's] self-reported medical history, among other information, is a medically acceptable methodology for assessing pain severity.").

In sum, after careful review, the Court finds that Dr. Glaser used a sound methodology in arriving at his opinions.

### *3. Admissibility*

Expert testimony is admissible if it "both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. Thus, the court must determine "whether the proposed testimony would be helpful to the trier of fact or to answer the factual question presented." *In re Groupon*, 2015 WL 1043321, at *2 (citation omitted). Bacot contends that Dr. Glaser's opinions are inadmissible because he "has improperly set forth a legal conclusion that the Plaintiff had a 'serious medical condition.'" (Dkt. 219 at ¶ 43). Specifically, Bacot argues that "[w]hether an inmate has a serious medical condition is an essential element of proving a claim for deliberate indifference and is a legal conclusion to be reached by the jury." (*Id.* at ¶¶ 41–42). To the contrary, "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a); *accord Sutton*, 2014 WL 551546, at *5 ("An expert opinion in a civil case is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact.") (citation omitted). Indeed, numerous courts have found that an expert may opine on whether a plaintiff had a "serious medical need." *See, e.g., Paine ex rel. Eilman v. Johnson*, No. 06 C 3173, 2010 WL 785394, at *2 (N.D. Ill. Feb. 26, 2010) ("[Expert's] experience in the assessment of detainees' mental health needs qualifies him to offer expert testimony

as to whether [the plaintiff's] behavior presented a *serious medical need*.") (emphasis added); *cf. Hahn v. Walsh*, 915 F. Supp. 2d 925, 948 & n.11 (C.D. Ill. 2013), *aff'd*, 762 F.3d 617 (7th Cir. 2014) (finding that defense expert may opine that the plaintiff did not have "a *serious medical need* for which imminent medical care was required") (emphasis added); *see also Walker v. Zunker*, No. 00 C 0281, 2000 WL 34234449, at *1 (W.D. Wis. Dec. 20, 2000) ("[I]n order to succeed on his claim that defendants are being deliberately indifferent to his serious medical needs, he will need to find a medical expert willing to testify that his back pain is so serious that failure to treat it constitutes cruel and unusual punishment."). "Moreover, the court will instruct the jury on the appropriate meaning of the legal standard and that the jury is free to reject the testimony of the expert." *Richman*, 415 F. Supp. 2d at 948; *see* Seventh Circuit Pattern Civil Federal Jury Instructions 1.21, 7.12 & 7.13.

However, Dr. Glaser may not opine on whether Bacot *knew or should have known* of a substantial risk of harm to Gomez by not taking him to a medical doctor immediately. Whether Bacot was deliberately indifferent is a subjective test and thus, what she "should have known" is neither relevant nor helpful to the jury. *Elcock v. Davidson*, 561 F. App'x 519, 524 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1415 (2015) ("whether defendants were deliberately indifferent is a subjective test that would not [ ] benefit[ ] from an expert"); *see Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 894 (E.D. Wis. 2006) ("At the outset, it is obvious that the experts retained for purposes of this litigation . . . would have no relevant opinion about what [the defendant] knew on August 19, 2001."). Moreover, Bacot will testify

about what she "knew" on May 16, 2009, and the jury can evaluate her credibility without expert testimony. *Ledford v. Sullivan*, 105 F.3d 354, 359 (7th Cir. 1997) ("The jury [is] capable of evaluating the defendants' subjective belief in light of the court's deliberate indifference definition without the aid of an expert. In making its decision, the jury [will] likely assess[ ] the defendants' credibility as well.").

Similarly, while Dr. Glaser may opine on the amount of pain, if any, that Gomez would have experienced had he been treated immediately for his wound, he may not opine as to the subjective pain that Gomez experienced. Gomez will testify as to his actual pain, which is a medical subject readily understood by the lay jurors. "[E]xpert testimony is not necessary to explain symptoms that can be understood by a layperson." *Elcock*, 561 F. App'x at 524 (citing *Gil v. Reed,* 381 F.3d 649, 659 (7th Cir. 2004)).

### III. CONCLUSION

In sum, Dr. Glaser may testify to the following opinions: A puncture wound from a shotgun pellet—such as the one suffered by Gomez—is a serious medical condition that should be treated and evaluated emergently by a physician. (Expert Report at 3–4). He may opine that the risks of harm that could result from a lack of immediate care include bleeding, arterial trauma, infection, and trauma to nerves. (*Id.* at 4). He may also testify that "Mr. Gomez suffered pain secondary to his serious medical condition," and a doctor could have treated the pain with "appropriate medical attention" through the debridement of the shotgun pellet "with the use of local anesthesia" and the use of "analgesics for his pain." (*Id.* at 5). "Had Mr. Gomez been

taken to a medical doctor immediately following his injury, Mr. Gomez would not have experienced as much pain over this four-day period as he did in the absence of treatment." (*Id.*). Finally, he may testify that based on his "experience as a medical professional, which includes working with licensed practical nurses," Bacot "should have taken Mr. Gomez to a medical doctor immediately upon learning of and viewing Mr. Gomez's wound." (*Id.* at 4–5).

However, Dr. Glaser is not permitted to testify that Bacot "knew or should have known the risks to Mr. Gomez from an untreated penetrating wound from a shotgun (including prolonged pain) and failed to act in disregard of these risks." (Expert Report at 4).

For the reasons stated above, Defendant's *Daubert* Motion to Bar Scott Glaser, M.D. Due to Lack of Qualification, Improper Methodology, and Improper Legal Conclusion [219] is **GRANTED IN PART AND DENIED IN PART**.

E N T E R:

Dated: January 19, 2016

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge